**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO / OAKLAND DIVISION**

SEASON VESCO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PROSPER FUNDING, LLC, and PROSPER MARKETPLACE, INC.

Defendants.

Case No.:

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## CLASS ACTON COMPLAINT

Plaintiff Season Vesco ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint on behalf of herself and all others similarly situated (the "Class") against Defendants Prosper Funding, LLC, and Prosper Marketplace, Inc., (collectively "Prosper" or "Defendant"). Except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge, the following allegations are made upon information and belief, including investigation conducted by counsel.

## NATURE OF THE ACTION

1. This action arises from Defendant's failure to properly secure and safeguard personally identifiable information including but not limited to Plaintiff's and Class Members' names and Social Security numbers, (collectively, "Private Information").

2. Defendant is a financial technology company based in San Francisco, operating a large peer-to-peer lending marketplace.

3. To provide its online financial services, Defendant stored and utilized Plaintiff's and Class Members' Private Information. By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and

equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. By voluntarily undertaking the collection of this sensitive Private Information, Defendant assumed a duty to use due care to protect that information.

4. Despite its duties to Plaintiff and Class Members, upon information and belief Defendant stored its Private Information on a database that was negligently and/or recklessly configured. This misconfiguration allowed files on the database to be accessed without a password or any form of multifactor authentication.

5. Defendant recently discovered that an unauthorized party gained access to its systems (the "Data Breach").[1] The exact nature and extent of the Data Breach is unknown, and such information is within the exclusive possession and control of Defendant.

6. Right now it is unclear how many victims were impacted by this Data Breach. Some reports indicate over 17 million victims. Formal notice has not gone out yet. Prosper sent out general notice emails to its customers, including Plaintiff, admitting that personal information including Social Security numbers was stolen in the Data Breach.

7. As a result of Defendant's failure to protect the sensitive information it was entrusted to safeguard, Plaintiff and Class Members have already suffered harm and have been exposed to a significant and continuing risk of identity theft, financial fraud, and other identity-related fraud for years to come.

## PARTIES

8. Plaintiff Season Vesco is an adult, who at all relevant times, is and was a citizen of the State of California. Plaintiff Vesco has an account with Prosper.

9. Defendant Prosper Funding, LLC is a Delaware limited liability company with its principal place of business at 221 Main Street, 3rd Floor, San Francisco, California 94105.

10. Defendant Prosper Marketplace, Inc., is a Delaware limited liability company with its principal place of business at 221 Main Street, 3rd Floor, San Francisco, California 94105.

[1] https://www.prosper.com/legal/incident-response (last visited Oct. 23, 2025).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because Plaintiff and at least one member of the proposed Class are citizens of a state different from at least one Defendant,[2] the proposed Class consists of more than 100 members, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. This Court has general personal jurisdiction over Defendant, as, at all relevant times, Defendant was headquartered in California, has engaged in substantial business activities in California, regularly conducts business in California, and has sufficient minimum contacts in California.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District. Defendant conducts substantial business in this District, and the Data Breach has caused harm to Plaintiff and Class Members residing in this District.

## FACTUAL BACKGROUND

### A. Defendant Collected, Stored, and Failed to Safeguard Plaintiff's and Class Members' Private Information.

14. Prosper is a peer-to-peer lending company. It promises "Money when you need it. Fast, easy, secure."[3]

15. Peer to peer lending is a way for individual investors to lend to borrowers, and for borrowers to experience a quicker application and approval process. In peer-to-peer lending, the funding for a loan comes from an individual facilitated through an online platform.[4]

---

[2] *See* 28 U.S.C. § 1332(d)(10) (stating that for purposes of CAFA jurisdiction, an unincorporated association is deemed to be citizen of State where it has its principal place of business and under whose laws it is organized).

[3] https://www.prosper.com/ (last visited Oct. 23, 2025).

[4] https://www.foxbusiness.com/fox-money/personal-loans/peer-to-peer-lending (last visited Oct. 23, 2025).

16. In its ordinary course of business, Defendant obtains, stores, maintains, and uses Plaintiff's and Class Members' Private Information.

17. Defendant agreed to and undertook legal duties to maintain the Private Information of Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws and regulations.

18. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

19. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosure of this Private Information.

20. Defendant explicitly acknowledges its duty to protect the privacy of Plaintiff's and Class Members' Private Information. Defendant represented to Plaintiff and Class Members that "We take security seriously. Our technology monitors for cyberattacks round-the-clock & looks for 300+ data points to identify fraud."[5]

21. In its Privacy Policy and Federal Privacy Notice, which is part of Plaintiff's and Class Members' agreement with Defendant, Prosper explicitly acknowledges and promises:

a. "Prosper uses significant safeguards, including physical, technical (electronic), and operational controls to protect your personal information, both during transmission and once received."

b. "Once on our system, personal information can only be read or written through defined service access points, the use of which is password-protected."

[5] https://www.prosper.com/invest (last visited Oct. 23, 2025).

c. “Data security is achieved through technical safeguards that include a combination of encryption, firewalls, intrusion prevention system, malware detection system, and data loss prevention systems. Prosper also conducts vulnerability scans of applications and systems regularly.”

d. “Access to the system is tightly controlled and limited to only those who have a need to access information. Administrative safeguards such as a security awareness program, background checks, and internal information use policy ensure that only trained and trusted staff are permitted to access personal information.”

e. “Some additional features of our security program include:

i. Secure Data Center: We store all sensitive financial information in state-of-the-art, highly secure data centers that are audited per AICPA SOC for Service Organizations. … we use the latest threat prevention technologies such as network and web application firewalls, VPN, antivirus, Web filtering and antispam technologies.”

22. Plaintiffs and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their Private Information which includes information that is static, meaning it does not change, and can be used to commit myriad financial crimes.

23. Prosper’s *Code of Conduct* applies to directors, board observers, officers, employees, contractors, and consultants. It states: “You must not access Prosper’s borrower or investor information or use borrower or investor information except for appropriate business purposes, and you must protect the confidentiality and security of such information.”[6]

24. Defendant did not implement reasonable and appropriate administrative, technical, and physical safeguards to protect the sensitive data it received and maintained.

---

[6] https://www.prosper.com/legal/code-ethics-business-conduct (last visited Oct. 23, 2025).

25. As a result of Defendant's failure to comply with its privacy and security obligations, Plaintiff's and Class Members' sensitive Private Information was accessed and stolen by cybercriminals.

**B. The Data Breach.**

26. In September 2025, Defendant discovered that an unauthorized party gained access to Defendant's systems at some point prior to September 1, 2025. The specific details regarding the date and extent of the Data Breach are within the exclusive control of Defendant.[7]

27. Defendant began providing email notification of the Data Breach in September, 2025, stating:

> Recently, we discovered unauthorized activity on our systems. As soon as we detected this, we acted quickly to stop the activity and strengthen our security measures, and we began working with a leading cybersecurity firm to investigate what happened. We also reported the incident to law enforcement and have offered our full cooperation.
>
> There is no evidence of unauthorized access to customer accounts and funds, and our customer-facing operations continue uninterrupted. We have evidence that confidential, proprietary, and personal information, including Social Security Numbers, was obtained, including through unauthorized queries made on Company databases that store customer information and applicant data. We will be offering free credit monitoring as appropriate after we determine what data was affected. We continuously monitor accounts and have strong safeguards in place to protect customers' funds.

28. Defendant admits that Plaintiff's and Class Members' Private Information was obtained by the threat actor.

29. Because Defendant failed to properly protect and safeguard Plaintiff's and Class Members' Private Information, an unauthorized third party was able to access Defendant's database and exfiltrate Private Information.

---

[7] https://www.prosper.com/legal/incident-response (last visited Oct. 23, 2025).

**C. The Data Breach was Foreseeable and Preventable.**

30. The financial services sector is one of the most targeted sectors by cyber criminals.[8] These entities collect and store vast amounts of sensitive information—including financial data, login credentials, employment status, dates of birth, income levels, government issues IDs and credit status information—all of which command high prices on underground markets.

31. In 2016, the Homeland Security Advisor Council (HSAC) warned that the Financial Services sector faced rapidly growing cyber threats.[9] The chair of the Securities and Exchange Commission (SEC) warned that cybersecurity was the biggest risk to the financial system.[10] The following year, in 2017, the National Infrastructure Advisory Council (NIAC) issued a report titled "Addressing Urgent Cyber Threats to Critical Infrastructure," advising that "[t]oday's cyber attacks are increasingly dangerous and targeted, designed by advanced actors to damage or disrupt critical U.S. infrastructure that deliver vital services—particularly…financial services."[11] According to a 2019 Identity Theft Resource Center and CyberScout Annual End-of-Year Data Breach Report, of the 1,473 recorded data breaches, 108 of them were in the financial services sector, responsible for 62% of the 164 million sensitive records exposed in 2019.[12]

---

[8] For Financial Institutions, Cyberthreats Loom Large, FORBES (March 9, 2022), https://www.forbes.com/sites/forbesfinancecouncil/2022/03/09/for-financialinstitutions-cyberthreats-loom-large/?sh=69dd96d82ddb.

[9] HSAC, Final Report of the Cybersecurity Subcommittee: Part I-Incident Response, 2016.

[10] Lisa Lambert and Suzanne Barlyn, SEC says cyber security biggest risk to financial system, REUTERS (May 18, 2016), available at https://www.reuters.com/article/us-finance-summit-sec-idUSKCN0Y82K4/.

[11] Securing Cyber Assets: Addressing Urgent Cyber Threats to Critical Infrastructure, THE PRESIDENT'S NATIONAL INFRASTRUCTURE ADVISORY COUNCIL (Aug. 2017), available at https://www.cisa.gov/sites/default/files/publications/niac-securing-cyber-assetsfinal-report-508.pdf.

[12] 2019 End-of-Year Data Breach Report, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wpcontent/uploads/2020/01/01.28.2020_ITRC_2019-End-of-Year-Data-BreachReport_FINAL_Highres-Appendix.pdf; 62% of breached data came from financial services in 2019, CIO DIVE (Dec. 23, 2019), available at https://www.ciodive.com/news/62-of-breached-data-came-from-financial-servicesin-2019/569592/; Bitglass' 2019 Financial Breach Report, BITGLASS.

32. Data breaches and identity theft have surged in recent years, creating growing economic consequences for individuals, businesses, and government entities. In 2023 alone, there were 6,077 recorded breaches exposing more than 17 billion records—representing a 19.8% year-over-year increase in the United States compared to 2022.[13] This trend is mirrored in identity theft complaints, which nearly doubled over a four-year span—from 2.9 million reports in 2017 to 5.7 million in 2021.[14]

33. In March 2022, Bloomberg described the financial services industry as experiencing an "unrelenting year of fighting off cyber threats," and warned financial services providers "should expect more of the same or even worse."[15] As noted in the article, the Financial Services Information Sharing and Analysis Center's ("FS-ISAC") annual report on cyber threats predicted "current trends to continue and possibly worsen over the next year," stating cybersecurity is "no longer just a back-office cost." These increases are "due to several factors," including the "rapid digitization of financial services, which accelerated during the pandemic," and "increased entry points for cyber criminals to possibly exploit." Teresa Walsh, who leads FS-ISAC's global intelligence office, described the financial sector as experiencing "a dizzying number of vulnerabilities."

34. In a ruling that took effect in May 2022, the Federal Deposit Insurance Corp. (FDIC), the Office of the Comptroller of the Currency (OCC), and the Federal Reserve (together, the "agencies") now require banks to notify their primary federal regulator within 36 hours of determining whether a "significant computer-security incident" could disrupt business or the

---

[13] Flashpoint, *2024 Global Threat Intelligence Report*, (Feb. 29, 2024), https://go.flashpoint.io/2024-global-threat-intelligence-report-download (last visited Oct. 24, 2025).

[14] Insurance Information Institute, *Facts & Statistics: Identity Theft and Cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited Oct. 24, 2025).

[15] Financial Firms Brace for More Cyber Threats After Trying 2021, BLOOMBERG (March 10, 2022), https://www.bloomberg.com/news/articles/2022-03-10/financial-firms-poised-for-worse-cyber-threats-after-trying-year (last visited Oct. 24, 2025)

stability of the financial sector, and requires banks to inform affected bank customers "as soon as possible," recognizing cyberattacks targeting the financial services industry "have increased in frequency and severity in recent years."[16]

35. Prosper also witnessed numerous high-profile cybersecurity incidents affecting other companies in the financial services sector, including: credit reporting agency Equifax (147 million customers impacted, September 2017), Heartland Bank (130 million customers, January 2008), Capital One Bank (100 million customers, March 2019), JPMorgan Chase (83 million customers, October 2014), Experian (24 million customers, August 2020), First American Financial (885 million customers, May 2019), Flagstar Bank (1.5 million customers, June 2022), and Mr. Cooper (14.5 million customers, October 2023), among scores of others.

36. Consequently, Prosper should have known of the importance of safeguarding the Private Information and of the foreseeable consequences that would occur if its data security system was breached, including the significant costs that would be imposed on customers as a result of a breach.

37. But despite all of the publicly available knowledge of the continued risks to client Private Information, and despite holding Private Information of millions of customers, Prosper failed to use reasonable care in maintaining the privacy and security of the Private Information of Plaintiff and Class Members.

38. Had Prosper implemented industry standard security measures and adequately invested in data security, unauthorized parties likely would not have been able to access Prosper's systems and the Data Breach would have been prevented or much smaller in scope.

---

[16] Fed, FDIC, OCC approve 36-hour window for reporting cyberattacks, BANKING DIVE (Nov. 19, 2021), available at https://www.bankingdive.com/news/36-hour-window-fed-fdic-occ-cybersecuritytechnology-vendor/592275/; FEDERAL RESERVE, Computer-Security Incident Notification Requirements for Banking Organizations and Their Bank Service Providers (April 1, 2022), available at https://www.federalreserve.gov/newsevents/pressreleases/files/bcreg20211118a1.pdf.

**D. Defendant Failed to Comply with FTC Guidelines.**

39. Defendant is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

40. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[17]

41. In 2016, the FTC updated its publication titled Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses.[18] The guidelines recommend that businesses implement the following:

(1) Businesses should promptly dispose of personal identifiable information that is no longer needed, and retain sensitive data "only as long as you have a business reason to have it;"

(2) Businesses should encrypt sensitive personal information stored on computer networks so that it is unreadable even if hackers are able to gain access to the information;

(3) Businesses should thoroughly understand the types of vulnerabilities on their network and how to address those vulnerabilities;

(4) Businesses should install intrusion detection systems to promptly expose security breaches when they occur; and

---

[17] *See* Federal Trade Commission, *Start with Security: A Guide for Business*, https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business (last visited Oct. 24, 2025).

[18] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Oct. 24, 2025).

(5) Businesses should install monitoring mechanisms to watch for large troves of data being transmitted from their systems.[19]

42. In another publication, the FTC recommended that companies not maintain Personally Identifiable Information ("PII"), such as Plaintiffs' Private Information, longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[20]

43. Notably, the FTC treats the failure to employ reasonable data security safeguards as an unfair act or practice prohibited by Section 5 of the FTC Act. Indeed, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

44. Upon information and belief, Defendant failed to properly implement one or more of the basic data security practices recommended by the FTC. Defendant's failure to employ reasonable and appropriate data security measures to protect against unauthorized access to individuals' Private Information constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

---

[19] *Id.*

[20] *See Start with Security: A Guide for Business*, Federal Trade Commission (June 2015), available at https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business.

45. Similarly, the U.S. Government's National Institute of Standards and Technology ("NIST") provides a comprehensive cybersecurity framework that companies of any size can use to evaluate and improve their information security controls.[21]

46. NIST publications include substantive recommendations and procedural guidance pertaining to a broad set of cybersecurity topics including risk assessments, risk management strategies, access controls, training, data security controls, network monitoring, breach detection, and incident response.[22] Upon information and belief, Defendant failed to adhere to the NIST guidance.

47. Defendant was well aware of its obligations to use reasonable measures to protect individuals' Private Information. Defendant also knew that it was a target for hackers, as discussed above. Despite understanding the risks and consequences of maintaining inadequate data security, Defendant nevertheless failed to comply with its data security obligations, leading to the compromise of Plaintiff's and Class Members' Private Information.

**E. Defendant Knew the Risks of Storing Valuable Private Information.**

48. At all relevant times, Prosper was aware that the Private Information it collected, maintained, created, and exchanged was highly sensitive and of significant value to bad actors seeking to misuse that Information.

49. Prosper also knew that a breach of its systems—and the resulting exposure of the sensitive information stored therein—posed a serious risk of identity theft, financial fraud, and other harm to affected individuals.

50. Private Information has considerable monetary value and is a well-known target for cybercriminals. Hackers can easily sell stolen data, as there has been a "proliferation of open and

---

[21] National Institute of Standards and Technology, *Framework for Improving Critical Infrastructure Cybersecurity*, National Institute of Standards & Technology (Apr. 16, 2018), App'x A, Table 2, https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf (last visited Oct. 24, 2025).

[22] *Id.* at Table 2, 26-43.

anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[23]

51. The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to identity theft, tax fraud, credit and bank fraud, and more.

52. **Social Security numbers**: Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

53. The Social Security Administration warns that the process of replacing a Social Security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make it more difficult for you to get credit.[24]

---

[23] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited Oct. 24, 2025).

[24] *Identify Theft and Your Social Security Numbers*, Social Security Admin. (June 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Oct. 24, 2025).

54. Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

**F. Plaintiff and Class Members Suffered Damages.**

55. For the reasons mentioned above, Defendant's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class Members significant injuries and harm in several ways. Plaintiff and members of the Class must immediately devote time, energy, and money to: (1) closely monitor their bills, records, and credit and financial accounts; (2) change login and password information on any sensitive account even more frequently than they already do; (3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and (4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

56. Once Private Information is exposed, there is virtually no way to recover the data or prevent future misuse. This is especially true here, where the information stolen during the Data Breach has likely been leaked on the dark web and remains available to download. As a result, Plaintiff and Class Members must maintain heightened vigilance indefinitely. Further, Plaintiff and Class Members have not been compensated for the unconsented and unauthorized disclosure of their Private Information, for which there is a robust market.

57. As a direct result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer economic and other concrete harms, including but not limited to:

(1) Unauthorized disclosure of their confidential information;

(2) Loss of the control of their Private Information;

(3) Loss of the benefit of their bargain in choosing organizations promising data protection;

(4) Identity theft, fraud, and misuse of financial information;

(5) Out-of-pocket expenses for credit monitoring, mitigation efforts, and fraud prevention tools;

(6) Unauthorized charges and restricted access to financial accounts;

(7) Emotional distress, anxiety, and loss of privacy;

(8) Time and productivity lost dealing with the consequences of the breach;

(9) Damage to credit scores, including from fraudulent inquiries; and

(10) Continued and imminent risk of future fraud and identity theft due to their data being in the hands of unauthorized third parties.

58. Individuals suffer harm each time their personal data is compromised and circulated on underground markets—even if they have been affected by prior breaches. The dark web contains vast, fragmented repositories of stolen information that can be aggregated by different criminals for varied forms of fraud. Each subsequent breach increases the likelihood that a victim's sensitive data will be accessed by more actors and exploited in new and damaging ways.

59. Even in instances where an individual is reimbursed for a financial loss due to identity theft or fraud, that does not make that individual whole again as there is typically significant time and effort associated with seeking reimbursement. There may also be a significant time lag between when personal information is stolen and when it is misused for fraudulent purposes.

60. Plaintiff and Class Members place significant value on data security and consider a company's ability to protect personal information a key factor in their purchasing decisions. Many consumers are willing to pay more for services from organizations that demonstrate strong cybersecurity practices. Conversely, consumers are far less likely to share personal data with companies that have suffered a data breach—reflecting the reputational damage and business consequences that flow from failing to safeguard sensitive information.

61. Because of the premium consumers place on data privacy, financial companies with robust security practices are viewed more favorably and can command higher prices than those

that do not. Had Prosper's customers known the truth about its lack of security they would not have used Prosper's services or paid less. As a result, Plaintiff and Class Members were deprived of the benefit of their bargain, having paid for secure and responsible handling of their Private Information but receiving substantially less in return.

62. By collecting and storing Plaintiff's and Class Members' sensitive information, Defendant undertook a duty to safeguard it and to avoid increasing the risk of identity theft or fraud. Because Defendant failed to uphold that duty, Plaintiff seeks the present value of identity protection services and other compensatory measures to address the current and future harm stemming from the Data Breach.

63. Additionally, Plaintiff and Class Members are entitled to recover the reasonable use value of their Private Information that was accessed and exfiltrated without authorization. This form of compensation mirrors damages awarded in intellectual property cases for unauthorized use of intangible assets. As with a patent or trade secret, Private Information is non-rivalrous: their unauthorized use by a third party does not eliminate the owner's ability to use them but still justifies compensation based on market value.

64. Prosper's delayed and incomplete notice of the Data Breach caused additional harm to Plaintiff and Class Members. The communication failed to disclose critical information, including the scope of the breach, the nature of the clinical information stolen, the number of individuals affected, and the identity of the threat actors. Many victims, including Plaintiff, have likely still not received formal notice. This lack of transparency has deprived victims of the ability to take timely, informed, and proactive measures to mitigate harm caused by the Data Breach.

65. Upon information and belief, Prosper continues to retain the Private Information of Plaintiff and all Class Members. As long as Prosper maintains possession of this information, Plaintiff and Class Members have a strong and ongoing interest in ensuring that adequate safeguards are in place to prevent further unauthorized access or disclosure.

**G. Plaintiff Season Vesco's Experience.**

66. Plaintiff Season Vesco is a current customer of Prosper. In order to receive services from Prosper, Plaintiff Vesco was required to provide and entrust Prosper with her Private Information. When providing and entrusting Prosper with her Private Information, Plaintiff Vesco reasonably expected that her Private Information would remain safe and not be accessed by unauthorized third parties.

67. In October 2025, Plaintiff Vesco received an email from Prosper informing her about the Data Breach likely impacting her Private Information.

68. Since learning about the Data Breach, Plaintiff Vesco has taken precautions to mitigate the risk of future identity theft and fraud. These precautions include continuously checking her financial accounts and researching the scope of the Data Breach, much of which Plaintiff Vesco will need to continue indefinitely to protect herself from harm resulting from the Data Breach. But for the Data Breach, Plaintiff Vesco would not have had to engage in these time-intensive mitigation efforts.

69. Plaintiff Vesco values her privacy and is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach.

70. Given the nature of the information involved and the malicious and intentional means through which the information was stolen, the Data Breach has also caused Plaintiff Vesco to suffer imminent harm arising from a substantially increased risk of additional fraud, identity theft, financial crimes, and misuse of her Private Information. This highly sensitive information is now in the hands of criminals and has likely been leaked on the dark web as a direct and proximate result of Defendant's misconduct.

71. The substantial risk of imminent harm and loss of privacy have also caused Plaintiff Vesco to suffer stress, fear, emotional distress, and anxiety.

72. Plaintiff Vesco has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected, and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

73. Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), as applicable, and/or (c)(4), Plaintiff seeks certification of the following nationwide class against Prosper:

> Nationwide Class: All U.S. persons whose Private Information was compromised in the Data Breach.

74. Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), as applicable, and/or (c)(4), Plaintiff seeks certification of the following Subclass:

> California Class: All citizens of California whose Private Information was compromised in the Data Breach.

75. Specifically excluded from the Classes are Defendant and its officers, directors, or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded from the Classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

76. These proposed class definitions are based on the information available to Plaintiff at this time. Plaintiff may modify the class definitions in an amended pleading or when they move for class certification as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

77. **Ascertainablity.** The members of the Classes are readily identifiable and ascertainable because the Classes are defined based on objective criteria. Defendant and/or its affiliates, among others, possess the information to identify and contact Class Members.

78. **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that joinder of all of them is impracticable. Based on Defendant's statements, the Classes contain hundreds of thousands of individuals whose Private Information was compromised in the Data Breach.

79. **Typicality: Federal Rule of Civil Procedure 23(a)(3).** As to the Classes, Plaintiff's claims are typical of the claims of the members because all Class Members had their Private Information compromised in the Data Breach and were harmed as a result.

80. **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class and State Subclasses. Plaintiff has no known interest antagonistic to those of the Classes and their interests are aligned with Class Members' interests. Plaintiff was subject to the same Data Breach as Class Members, suffered similar harms, and face similar threats due to the Data Breach. Plaintiff has also retained competent counsel with significant experience litigating complex class actions, including Data Breach cases.

81. **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are questions of law and fact common to the Classes such that there is a well-defined community of interest in this litigation. These common questions predominate over any questions affecting only individual Class Members. The common questions of law and fact include, without limitation:

(1) Whether Defendant owed Plaintiff and Class Members a duty to implement and maintain reasonable security procedures and practices to protect their Private Information;

(2) Whether Defendant acted negligently in connection with the collection, storage, monitoring and/or protection of Plaintiff's and Class Members' Private Information;

(3) Whether Defendant breached its duty to implement reasonable security procedures to protect Plaintiff's and Class Members' Private Information;

(4) Whether Defendant's breach of its duty to implement reasonable security procedures directly and/or proximately caused damages to Plaintiff and Class Members;

(5) Whether Defendant provided timely notice of the Data Breach to Plaintiff and Class Members; and

(6) Whether Plaintiff and Class Members are entitled to compensatory damages, statutory damages, punitive damages, and/or nominal damages as a result of the Data Breach.

82. Defendant has engaged in a common course of conduct and Plaintiff and Class Members have been similarly impacted by Defendant's failure to act reasonably in collecting and storing the Private Information and to maintain reasonable security procedures and practices to protect such information, as well as Defendant's failure to timely alert affected individuals to the Data Breach.

83. **Superiority: Federal Rule of Civil Procedure 23(b)(3).** This class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most if not all Class Members would find the cost of litigating their individual claims prohibitively high and have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and risk inconsistent treatment of claims arising from the same set of facts and occurrences. Plaintiff knows of no difficulty likely to be encountered in the maintenance of this action as a class action under the applicable rules.

84. **Injunctive Relief is Appropriate under Federal Rule of Civil Procedure 23(b)(2).** Defendant has failed to take actions to safeguard Plaintiff's and Class Members Private Information such that injunctive relief is appropriate and necessary. Defendant has acted on grounds that apply generally to the Class (and Subclass) as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## **CAUSES OF ACTION**

### **COUNT I**

### **Negligence**

***(On Behalf of Plaintiff and the Nationwide Class)***

85. Plaintiff repeats and realleges every allegation set forth in Paragraphs 1 through 84 above as though fully set forth herein.

86. Defendant obtained Plaintiff's and Class Members' Private Information for commercial gain. Defendant Prosper collected and stored this Private Information for purposes of providing services to its customers and their clients.

87. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in protecting their Private Information from unauthorized disclosure or access.

88. Defendant owed a duty of care to Plaintiff and Class Members to provide adequate data security, consistent with industry standards, to ensure that its systems and networks adequately protected the Private Information.

89. Defendant's duty to use reasonable care in protecting Private Information arises as a result of its relationship as a financial services company, common law and federal law, and its own statements regarding privacy and data security. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices.

90. Given the sensitivity of the Plaintiff's and Class Members' Private Information that Defendant collected and stored, and given the history of data breaches against other entities in the financial services sector as described above, it was foreseeable that cybercriminals would attempt to hack Defendant's systems to obtain Plaintiff's and Class Members' Private Information.

91. Defendant's duty included obligations to take reasonable steps in the management of the Private Information of Plaintiff and Class Members to prevent its disclosure and safeguard such information from theft. Defendant's duties included the responsibility to affirmatively design, implement, and monitor data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

92. Defendant was aware of and embraced its duty to exercise reasonable care in handling the Private Information of Plaintiff and Class Members.

93. For example, on its websites, Defendant touts that "We take security seriously. Our technology monitors for cyberattacks round-the-clock."[25]

94. Defendant was subject to an independent legal duty to exercise reasonable care in handling Plaintiff's and Class Members' Private Information, untethered to any contract between it and either Plaintiff or Class Members. In addition to the duties described above, the sources of Defendant's duties are those imposed by laws such as Section 5 of FTC Act.

95. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. 15 U.S.C. § 45(a)(1).

96. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

97. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and failing to comply with applicable industry standards, including but not limited to failing to protect against foreseeable security threats such as ransomware attacks. Defendant's conduct was unreasonable given the nature and amount of Private Information it obtained, stored, and disseminated in the regular course of their business, and the foreseeable consequences of a data breach, including, specifically, the significant damage that would result to Plaintiff and Class Members.

98. Defendants' violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belongs and to prevent the types of harm that resulted from the Data Breach.

---

[25] https://www.prosper.com/invest

99. Defendant knew, or should have known, of the risks inherent in collecting and storing Private Information in a centralized location, its vulnerability to ransomware and network attacks, and the importance of adequate security.

100. Defendant breached its duties to Plaintiff and Class Members in numerous ways, as described herein, including by:

a. Failing to exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the Private Information of Plaintiff and Class Members;

b. Failing to comply with industry standard data security measures leading up to the Data Breach;

c. Failing to protect against foreseeable security threats such as ransomware attacks;

d. Failing to comply with its own privacy policies and those of the entities for which it provided services;

e. Failing to comply with regulations protecting the Private Information at issue during the period of the Data Breach;

f. Failing to adequately monitor, evaluate, and ensure the security of its network and systems;

g. Failing to recognize in a timely manner that Private Information had been compromised; and

h. Failing to timely and adequately disclose the Data Breach.

101. Plaintiff's and Class Members' Private Information would not have been compromised but for Defendant's wrongful and negligent breach of its duties.

102. Defendant's failure to take proper security measures to protect the sensitive Private Information of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access and exfiltration of Private Information by unauthorized third parties. Given that entities in the financial services industry are prime targets

for hackers, Plaintiff and Class Members are part of a foreseeable, discernible group that was at high risk of having their Private Information misused or disclosed if not adequately protected by Defendant.

103. It was also foreseeable that Defendant's failure to provide timely and forthright notice of the Data Breach would result in injury to Plaintiff and Class Members.

104. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have and will suffer monetary and non-economic damages including: (i) the loss of rental or use value of their Private Information; (ii) the unconsented disclosure of their Private Information to unauthorized third parties; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it; (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (ix) the present value of ongoing credit monitoring and identity defense services necessitated by Defendant's data breach; (x) the loss of the benefit of the bargain for the failure of Defendant to securely store and maintain their Private Information; and (xi) any nominal damages that may be awarded.

105. Plaintiff and Class Members seek all available damages suffered as a result of Defendant's negligence, including compensatory, consequential, general, and/or nominal damages.

**<u>COUNT II</u>**

**Unjust Enrichment**

***(On Behalf of Plaintiff and the Nationwide Class)***

106. Plaintiff repeats and realleges every allegation set forth in Paragraphs 1 through 84 above as though fully set forth herein.

107. Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conferred upon, collected by, used by, and maintained by Defendant and that was ultimately stolen in the Data Breach.

108. Plaintiff and Class Members procured financial services from Defendant, and thereby conferred a benefit upon it in the form of monies they paid for these services. Plaintiff and Class Members also conferred their Private Information upon Defendant.

109. Defendant benefited by the conferral upon it of the Private Information pertaining to Plaintiff and the Class Members and by its ability to retain, use, and profit from that information. Defendant understood and valued these benefits.

110. Defendant also understood and appreciated that the Private Information pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that Private Information.

111. Without Defendant's willingness and commitment to maintain the privacy and confidentiality of the Private Information, that Private Information would not have been transferred to and entrusted to Defendant. Further, if Defendant had disclosed that its data security measures were inadequate, Defendant would not have been permitted to continue in operation by regulators or their clients.

112. Because of Defendant's use of Plaintiff's and Class Members' Private Information, Defendant sold more services and products than they otherwise would have. Defendant was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

113. Defendant also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information, or to exercise sufficient oversight over the data security practices of its contractors.

114. Defendant also benefited through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class Members' Private Information.

115. It is inequitable for Defendant to retain these benefits.

116. As a result of Defendant's wrongful conduct as alleged in this Complaint (including among other things their failure to employ and oversee adequate data security measures, their continued maintenance and use of the Private Information belonging to Plaintiff and Class Members without having adequate data security measures, and their other conduct facilitating the theft of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

117. Defendant's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to ensure that information maintained was secure from intrusion and theft by hackers and identity thieves.

118. It is inequitable, unfair, and unjust for Defendant to retain these wrongfully obtained benefits. Defendant's retention of wrongfully obtained monies violates fundamental principles of justice, equity, and good conscience.

119. The benefit conferred upon, received, and enjoyed by Defendant was not conferred gratuitously, and it would be inequitable, unfair, and unjust for Defendant to retain the benefit.

120. Defendant's defective security and its unfair and deceptive conduct has, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their Private Information and has caused Plaintiff and Class Members other damages as described herein.

121. Plaintiff and Class Members have no adequate remedy at law because of Defendants' continuing inadequate security practices, and because their injuries include an imminent and ongoing risk of identity theft and fraud.

122. Defendant is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically: the value to Defendant of the Private Information that was stolen in the Data Breach; the profit Defendant received and is receiving from the use of that information; the amounts that Defendant overcharged Plaintiff and Class Members for use of its products and services; and the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

**COUNT III**

**Invasion of Privacy**

**Cal. Const., Art. I, § I**

***(On Behalf of Plaintiff and the California Class)***

123. Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 84 above as though fully set forth herein.

124. Plaintiff and Class Members shared their Private Information with Defendant with the expectation that Plaintiff and Class Members wanted to their Private Information to remain private and non-public.

125. Plaintiff and Class Members have a right to privacy, enforceable under the California Constitution, to their Private Information. The disclosure of such information is highly offensive and constitutes an egregious breach of social norms.

126. Plaintiff and Class Members reasonably expected that the Private Information they shared with Defendant would be protected and secured against access by unauthorized parties and would not be disclosed to or obtained by unauthorized parties or disclosed or obtained for any improper purpose.

127. Defendant intentionally intruded into Plaintiff's and Class Members' seclusion by allowing their Private Information to be obtained by a criminal third party.

128. By failing to keep Plaintiff's and Class Members' Private Information secure, and allowing for the disclosure of Private Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, inter alia:

a. Intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

b. Invading their privacy by improperly using their Private Information properly obtained for another purpose, or disclosing it to unauthorized persons;

c. Failing to adequately secure their Private Information from disclosure to unauthorized persons; and

d. Enabling the disclosures of their Private Information without consent.

129. The Private Information that was compromised during the Data Breach was highly sensitive, private, and confidential. Further, the Private Information included Social Security numbers and other information that is the type of sensitive, personal information that one normally expects will be protected from exposure by the entity charged with safeguarding it.

130. The disclosure of such information would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

131. As a direct and proximate result of Defendant's invasion of privacy, Plaintiff and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members seek all available damages suffered as a result of Defendant's invasion of privacy, including compensatory, consequential, general, and/or nominal damages.

132. Alternatively, Defendant is liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically: the value to Defendant of the Private Information that was stolen

in the Data Breach; the profit Defendant received and is receiving from the use of that information; the amounts that Defendant overcharged Plaintiff and Class Members for use of its products and services; and the amounts that Defendant should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

**COUNT IV**

**Breach of Implied Contract**

**(*On Behalf of Plaintiff and the Nationwide Class*)**

133. Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 84 above as though fully set forth herein.

134. Plaintiff and Class Members were required to provide sensitive Private Information to Defendant as a precondition for receiving financial services. As part of this exchange, there was an implied contract with Defendant when it accepted custody of their Private Information.

135. As part of these transactions, Defendant agreed to safeguard and protect the Private Information of Plaintiff and Class Members and to timely and accurately notify them if it was breached or compromised.

136. Plaintiff and Class Members entered into the implied contracts with the reasonable expectation that Defendant's data security practices and policies were reasonable and consistent with the legal requirements, industry standards, and Defendant's own representations.

137. Defendant's implied promises to safeguard Plaintiff's and Class Members' PII are evidenced by representations on Defendants' websites. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendants on the other, is further demonstrated by their conduct and course of dealing. Such representations include:

(1) "Prosper uses significant safeguards, including physical, technical (electronic), and operational controls to protect your personal information, both during transmission and once received."

(2) "Once on our system, personal information can only be read or written through defined service access points, the use of which is password-protected."

> (3) "Access to the system is tightly controlled and limited to only those who have a need to access information. Administrative safeguards such as a security awareness program, background checks, and internal information use policy ensure that only trained and trusted staff are permitted to access personal information."
>
> (4) "We store all sensitive financial information in state-of-the-art, highly secure data centers that are audited per AICPA SOC for Service Organizations. … we use the latest threat prevention technologies such as network and web application firewalls, VPN, antivirus, Web filtering and antispam technologies."

138. Plaintiff and Class Members reasonably believed that Defendant would use part of the monies paid to Defendant under the implied contracts or the monies obtained from the benefits derived from the Private Information they provided to fund proper and reasonable data security practices.

139. Plaintiff and Class Members would not have provided and entrusted their Private Information to Defendant or would have paid less for Defendant's products or services in the absence of the implied contract or implied terms between them and Defendant. The safeguarding of the Private Information of Plaintiff and Class Members was material to realize the intent of the parties.

140. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

141. Defendant breached their implied contracts with Plaintiff and Class Members to protect their Private Information when Defendant by: (1) failing to implement adequate data security to protect Plaintiff's and Class Members' Private Information; (2) disclosing that information to unauthorized third parties and; (3) failing to notify Plaintiff and Class Members of the specific data breached in a reasonably timely manner.

142. As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and Class Members have been injured and are entitled to damages. Plaintiff and Class Members seek all available damages, including compensatory, consequential, general, and/or nominal damages, in an amount to be proven at trial.

**<u>COUNT V</u>**

**Declaratory and Injunctive Relief**

***(On Behalf of Plaintiff and the Nationwide Class)***

143. Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 84 above as though fully set forth herein.

144. This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes this Court to enter a judgment declaring the rights and legal relations of the parties and grant necessary further relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statute and state common law as described in this Amended Complaint.

145. Upon reason and belief, Defendant still possesses the Private Information of Plaintiff and Class Members. Further, Defendant still owes legal duties to adequately secure and protect the Private Information of Plaintiff and Class Members.

146. There is no reason to believe that Defendant’s security measures are any more adequate now than they were before the Data Breach to meet its legal duties. For example, since the Data Breach, Defendant has not yet announced any specific changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

147. An actual controversy has arisen in the wake of the Data Breach regarding the Private Information of Plaintiff and Class Members and whether Defendant is currently maintaining data security measures adequate to protect from further data breaches that compromise such Private Information. Plaintiff alleges that Defendant’s data security measures remain inadequate. Furthermore, Plaintiff and Class Members continue to suffer injury as a result of the compromise of their Private Information as it remains accessible on the and remain at imminent risk that further compromises of their Private Information will occur in the future.

148. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure Private Information obtained from Plaintiff and Class Members and to timely notify such individuals of a data breach under the common law, Section 5 of the FTC Act;

b. Defendant breached and continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information; and

c. Defendant's breach of its legal duty continues to cause harm to Plaintiff and Class Members.

149. This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols (and oversight of such protocols) consistent with law and industry standards to protect individuals' (i.e., those of Plaintiff and Class Members) Private Information.

150. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial, a fact Defendant acknowledges in its prospectus.[26] In fact, now that Defendant's insufficient data security is known to hackers, the Private Information in Defendant's possession is even more vulnerable to cyberattack. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

151. The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an

[26] https://www.prosper.com/Downloads/Legal/Prosper_Prospectus_2025-09-25.pdf at p. 43 ("future attacks are likely to occur.").

injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a preexisting legal obligation to employ such measures.

152. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff, Class Members, and consumers whose confidential information would be further compromised.

**<u>COUNT VI</u>**

**Violation of the California Consumer Privacy Act**

**Cal. Civ. Code §§ 1798.100, *et seq.***

***(On Behalf of Plaintiff and the California Class)***

153. Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 84 above as though fully set forth herein.

154. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

155. Plaintiff and Members of the California Class are consumers and California residents as defined by Cal. Civ. Code § 1798.140(i).

156. Defendant is a businesses that is organized or operated for the profit or financial benefit of its shareholders or other owners, and each with annual gross revenues over $25 million.

157. Defendant is a business that collect consumers' Private Information as defined by Cal. Civ. Code § 1798.140(f). Specifically, Defendant obtains, receives, or accesses consumers' Private Information when providing financial services.

158. Defendant determines the purposes and means of processing consumers' Private Information. Defendant uses consumers' personal data to provide services at customers' requests, as well as to develop, improve, sell, and test Defendant's services.

159. For example, Defendant uses consumer information to "[d]evelop new products and services or improve them and your experience with them, including using your personal information to train and improve Prosper's internal artificial intelligence tools" and "using your personal information to improve credit models and our services." *See e.g.*, https://www.prosper.com/legal/privacy-policy.

160. To the extent that Defendant stores medical information or protected health information, upon information and belief, Defendant stores non-medical patient information in a different manner than medical information.

161. Defendant has a duty to implement and maintain reasonable data security procedures and practices to protect the Private Information of Plaintiff and Class Members. As a direct and proximate result of Defendant's violations of their duty to implement and maintain reasonable security procedures and practices, their Private Information was subject to unauthorized access and exfiltration, theft and/or disclosure in violation of the CCPA, Cal. Civ. Code § 1798.150.

162. Defendant violated Section 1798.150 of the California Consumer Privacy Act by failing to prevent the nonencrypted and nonredacted Private Information of Plaintiff and Class Members from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

163. Defendant knew or should have known that their data security practices were inadequate to secure the Private Information of Plaintiff and Class Members and that their inadequate data security practices gave rise to the risk of a data breach.

164. Defendant failed to implement, maintain, and oversee reasonable security procedures and practices appropriate to the nature of the Private Information they collected and stored.

165. The Private Information of Plaintiff and Members of the California Class at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information Defendant collected and stored and which was impacted by the Data Breach include an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) employment status; (v) credit status information; (vi) IP addresses; and (vii) physical address.

166. Defendant stored and maintained the Private Information at issue in a form that allowed criminals to access it.

167. The cybercriminals accessed "nonencrypted and unredacted Private Information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d), in the Data Breach.

168. Defendant violated the CCPA, Cal. Civ. Code § l798.150(a), by failing to prevent the unencrypted and unredacted Private Information of Plaintiff and Class Members from unauthorized access and exfiltration, theft, or disclosure.

169. Because Defendant is still in possession of such Private Information, Plaintiff and the California Class seek injunctive or other equitable relief to ensure that Defendant implement

and maintain reasonable data security measures and practices to prevent an event like the Data Breach from occurring again.

170. Plaintiff seeks injunctive relief in the form of an order requiring Defendant to employ adequate security practices consistent with law and industry standards to protect the Private Information of the Class Members, requiring Defendant to complete its investigation, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the authorization of the of the Class Members, along with an explanation of how the data breach occurred.

171. Plaintiff and the Class Members seek statutory damages or actual damages, whichever is greater, pursuant to Cal. Civ. Code § 1798.150(a)(1)(A).

172. As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §§ 1798.150, Plaintiff and Class Members suffered damages, as described above.

173. On October 27, 2025, Defendant was sent written notice of its violations pursuant to Cal. Civ. Code § 1798.150 by Plaintiff Vesco.

174. Because Defendant has not and cannot cure the noticed violation, Plaintiff and Class Members seek statutory damages pursuant to Cal. Civil Code § 1798.150(a)(1)(A).

175. Plaintiff and Class Members therefore seek all actual and compensatory damages according to proof or statutory damages allowable under the CCPA, whichever are higher, and such other and further relief as this Court may deem just and proper, including injunctive or declaratory relief.

**COUNT VII**

**California Unfair Competition Law**

**Cal. Civ. Code §§ 17200, *et seq.***

***(On Behalf of Plaintiff and the California Class)***

176. Plaintiff repeats and realleges each allegation every allegation set forth in paragraphs 1 through 84 above as though fully set forth herein.

177. Defendant has engaged and continue to engage in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, *et seq*.

178. Defendant stored, and continues to store, the Private Information of Plaintiff and Class Members in its computer systems and/or networks.

179. Defendant knew or should have known that it has not maintained or overseen reasonable and appropriate security measures that complied with federal regulations to safeguard consumers' Private Information.

180. Moreover, Defendant failed to disclose that Plaintiff's and Class Members' Private Information were susceptible to hackers due to Defendant's inadequate data security measures, and that Defendant was the only one in possession of that material information. Defendant had a duty to disclose information regarding the susceptibility of Plaintiff's and Class Members' Private Information.

181. Defendant's actions and inactions have violated the "unlawful" prong of the UCL. Defendant violated Section 5(a) of the FTC Act (which is a predicate legal violation for this UCL claim) by misrepresenting, by omission, the safety and security of their computer systems, and its ability to safely store Plaintiff's and Class Members' Private Information.

182. Defendant has further violated Section 5(a) of the FTC Act by failing to implement and oversee reasonable and appropriate security measures or follow industry standards in their data security practices, by failing to ensure their affiliates with which it directly or indirectly shared the Private Information did the same, and by failing to timely notify Plaintiff and Class Members of the Data Breach.

183. Additionally, Defendant's conduct has violated the "unlawful" prong because its conduct has (a) violated the California Consumer Records Act, Cal. Civ. Code 1798.80 *et seq.* (as described in Count XV herein); (b) violated California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.* and § 1798.100, (as described in Count XI herein); (c) constituted negligence and

negligence per se; and (d) and violated federal law and regulations, including Section 5 of the FTC Act).

184. Had Defendant complied with these legal requirements to take proper measures to protect their Personal Information, Plaintiff and Class Members would not have suffered the damages related to the Data Breach. Plaintiff and Class Members suffered additional damages from Defendant's failure to timely notify Plaintiff and Class Members of the Data Breach.

185. Defendant's actions and inactions have further violated the "unfair" prong of the UCL.

186. Under the "balancing test," Defendant has engaged in unfair business practices. The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweighs any perceived utility. Defendant's failure to follow and oversee basic data security protocols and failure to disclose inadequacies of Defendant's data security cannot be said to have had any utility at all. There were ample reasonable alternatives Defendant could have used to strengthen its data security. All of Defendant's actions and omissions in this respect were injurious to Plaintiff and Class Members, directly causing the harms alleged below.

187. Similarly, Defendant has engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described herein, have violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the California law.

188. Defendant has engaged in unfair business practices under the "FTC test." The harm caused by Defendant's actions and omissions, as described in detail above, is substantial in that it

affects thousands of Class Members and has caused those persons to suffer actual harm. Such harms include a substantial risk of identity theft, disclosure of Plaintiff's and Class Members' Private Information to third parties without their consent, diminution in value of their Private Information.

189. These unfair acts and practices have been immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members. They have been likely to deceive the public into believing their Private Information was securely stored when it was not. The harm these practices have caused to Plaintiff and Class Members outweighed their utility, if any. Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively declared public policy, and is immoral, unethical, oppressive, and unscrupulous.

190. Plaintiff and Class Members continue to suffer harm, as Plaintiff's and Class Members' Private Information remains in Defendant's possession, without adequate protection, and remains in the hands of those who obtained it without their consent.

191. Plaintiff and Class Members have conferred a benefit on Defendant to purchase financial services. Defendant knew that Plaintiff and Class Members conferred this benefit upon them, and Defendant appreciated and accepted the benefit. Defendant has profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

192. Plaintiff and Class Members have suffered injury in fact and lost money or property as a result of Defendant's violations of the UCL. Plaintiff and the Class Members were damaged and injured by, inter alia, the significant costs of protecting themselves from identity theft and by facing ongoing and impending damages related to the theft of their Private Information (including, for example, by purchasing or continuing to pay for credit monitoring); entering into transactions with Defendant that should have included adequate data security for their Private Information but did not; experiencing a diminution of value in their Private Information as a result if its theft by cybercriminals; the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their Private Information, and the right to control that information.

193. Defendant's conduct constitutes a continuing violation of the UCL because, on information and belief, Defendant has failed to ensure that the inadequate security practices have been remedied. Defendant still has not provided adequate information on the cause and scope of the Data Breach. The risk of another data breach is real, immediate, and substantial. Plaintiff and the Class Members seek equitable relief to require Defendant to institute and maintain reasonable security measures to protect their Private Information.

194. Plaintiff and Class Members lack an adequate remedy at law because of ongoing inadequate security practices, and because the injuries include an imminent and ongoing risk of identity theft and fraud.

195. Plaintiff and Class Members seek all monetary and non-monetary relief available the UCL, including restitution of all profits stemming from Defendant's unlawful and unfair business practices or use of their Private Information; reasonable attorneys' fees and costs; injunctive relief; and other appropriate equitable relief.

## COUNT VIII

**California Customer Records Act**

**Cal. Civ. Code §§ 1798.80, *et seq.***

***(On Behalf of Plaintiff and the California Class)***

196. Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 84 above as though fully set forth herein.

197. Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that Private Information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information." *Id.*

198. Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

199. Cal. Civ. Code § 1798.84(b) provides that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

200. Plaintiff and Class Members are "customers" of Defendant within the meaning of Cal. Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to Defendant for the purposes of obtaining financial services.

201. Defendant is a business that owns, maintains, and licenses "personal information", within the meaning of Cal. Civ. Code § 1798.81.5(d)(1), about Plaintiff and Class Members.

202. The Private Information of Plaintiff and Class Members at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the Private Information Defendant collects and which was impacted by the Data Breach includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not securely encrypted or redacted: (i) Social Security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) Health insurance information; or (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

203. Moreover, Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by expedient time possible and without unreasonable delay . . . ."

204. Any person or business that is required to issue a security breach notification under the Customer Records Act must meet the following requirements under §1798.82(d):

a. The name and contact information of the reporting person or business subject to this section;

b. The name and contact information of the reporting person or business subject to this section;

c. If the information is possible to determine at the time the notice is provided, then any of the following:

i. the date of the breach,

ii. the estimated date of the breach, or,

iii. the date range within which the breach occurred. The notification shall also include the date of the notice.

d. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e. A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

f. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g. If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

205. Defendant is a business that owns or licenses computerized data that includes personal information as defined by Cal. Civ. Code § 1798.82(h).

206. Plaintiff's and Class Members' Private Information includes "personal information" as covered by Cal. Civ. Code §§ 1798.81.5(d)(1), 1798.82(h).

207. The Data Breach described herein constituted a "breach of the security of the system" containing the personal information of Plaintiff and Class Members.

208. Because Defendant reasonably believed that Plaintiff's and Class Members' Private Information was acquired by unauthorized persons during the Data Breach, it had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Cal. Civ. Code § 1798.82.

209. Defendant has unreasonably delayed informing Plaintiff and Class Members about the Data Breach, affecting their Private Information, after Defendant knew that the Data Breach occurred. Specifically, Defendant knew about the Data Breach at least as early as September 2025, but has not formally sent out notice. The informal notice it has provided failed to sufficiently describe all the data that was stolen.

210. By failing to disclose the Data Breach in a timely and accurate manner, Defendant violated Cal. Civ. Code § 1798.82.

211. As a result of Defendant's violations of Cal. Civ. Code § 1798.82, Plaintiff and Class Members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class Members because their stolen information would have had less value to identity thieves.

212. As a result of Defendant's violations of Cal. Civ. Code § 1798.82, Plaintiff and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

213. As a direct consequence of the actions as identified above, Plaintiff and Class Members incurred additional losses and suffered further harm to their privacy, including, but not

limited to, economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive Private Information disclosed, that they would not have otherwise incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes set forth herein, respectfully request the following relief:

A. That the Court certify this action as a class action and appoint Plaintiff and their Counsel to represent the Classes;

B. That the Court grant permanent injunctive relief to prohibit and prevent Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

C. That the Court award Plaintiff and Class Members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

D. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of its unlawful acts, omissions, and practices;

E. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

F. That the Court award pre-and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in the instant action.

Dated: October 29, 2025

*/s/ Jason S. Hartley*
Jason S. Hartley (SBN 192514)
Jason M. Lindner (SBN 211451)
**HARTLEY LLP**
101 W. Broadway, Ste 820
San Diego, CA 92101
Telephone: (619) 400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

Norman E. Siegel*
Barrett J. Vahle*
Tanner J. Edwards*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com
vahle@stuevesiegel.com
tanner@stuevesiegel.com

**Pro Hac Vice forthcoming*

***Attorneys for Plaintiff Vesco
and the Proposed Class***